UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NOS. 22-22942-CIV-ALTMAN
19-20063-CR-ALTMAN-2

**KEON TRAVY GLANTON**,

    *Movant*,

v.

**UNITED STATES OF AMERICA**,

    *Respondent*.
_____/

## ORDER

Keon Travy Glanton is a federal prisoner serving a 400-month sentence in the custody of the Bureau of Prisons. *See* Amended Judgment, *United States v. Glanton*, No. 19-20063-CR-RKA-2 (S.D. Fla. Sept. 17, 2021), ECF No. 207 at 2. Claiming that his conviction and sentence are unconstitutional, Glanton has filed a motion to vacate under 28 U.S.C. § 2255. *See* Motion to Vacate ("Motion") [ECF No. 1]; Memorandum of Law ("Memo") [ECF No. 1-1].

Rule 4(b) of the Rules Governing Section 2255 Cases authorizes a district court to summarily deny a § 2255 motion, even "[w]ithout an answer or other pleading from the" United States, "if it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002) (cleaned up). And that's what we have here: a facially meritless 2255 whose claims are conclusively refuted by the record. The Motion is **DENIED**.

### THE CHARGE AND THE PLEA

The Grand Jury charged Glanton and two codefendants in a twelve-count Indictment. *See* Indictment, *United States v. Glanton*, No. 19-20063-CR-RKA-2 (S.D. Fla. Feb. 1, 2019), ECF No. 1. The Indictment alleged that Glanton (1) conspired to commit Hobbs Act robberies (Count 1); (2)

committed a Hobbs Act robbery (Count 4); brandished a firearm in furtherance of that Hobbs Act robbery (Count 5); committed a second Hobbs Act robbery (Count 6); kidnapped the victim during this second robbery in a way that resulted in the victim's death (Count 7); carjacked the victim in the second robbery in a way that resulted in the victim's death (Count 8); discharged a firearm in furtherance of the second robbery (Count 9); caused the death of a person while committing the second robbery (Count 10); and arson (Count 12). *Id.* at 20–21.

Glanton ultimately pled guilty to Counts 1, 5, 8, 9, and 10 of the Indictment. *See* Plea Agreement, *United States v. Glanton*, No. 19-20063-CR-RKA-2 (S.D. Fla. Apr. 2, 2021), ECF No. 161 at 1. As part of his plea agreement, Glanton agreed to waive his "right to appeal the sentence imposed in this case" and promised never to claim that "the admitted conduct does not fall within the scope of the statutes of conviction." *Id.* at 6–7. Glanton also admitted that, at trial, the Government would have proven the following facts beyond a reasonable doubt:

> On July 11, 2018, [codefendant Jamal Lamar] Head and Glanton drove to [codefendant] Christopher Grant Proby's residence in Riviera Beach, Florida. Head and Glanton picked up Proby and a 15-year-old female ("Minor 1"). One of the men directed Minor 1 to call the nationwide plumbing company "Roto-Rooter" to request a plumber to complete a call for service at a designated address. . . . The men discussed that they were going to rob the plumber when he arrived at the service call and take valuable plumbing equipment. During this time, Head was holding a black semi-automatic pistol.
>
> Victim D.S., a plumber employed by Roto-Rooter, arrived at the abandoned residence. . . . Head then attacked D.S. with the black semi-automatic pistol, striking him in the head and holding him at gunpoint. . . . While holding D.S. at gunpoint, Head took D.S.'s Roto-Rooter van keys, cell phone, and wallet. . . . Head provided D.S.'s work van keys to Proby and Glanton, who then removed valuable plumbing equipment from D.S.'s work van. In total, Proby and Glanton took over $10,000 worth of plumbing equipment[.]
>
> [ . . . ]
>
> On the afternoon of July 12, 2018, Glanton and Head planned to complete another robbery of a plumber. Using Glanton's cell phone, Head called multiple plumbers in order to set up another robbery in Miami Lakes. At Head's request, plumber "R.O." ultimately agreed to send another plumber, victim "L.S.H." to an address located [in Miami Lakes].

> [ . . . ]
>
> Shortly after 7:00 p.m., victim L.S.H. arrived at the Miami Lakes address . . . . Glanton and Head took L.S.H.'s van keys and cell phone and Head forced L.S.H. into the rear seat of the rental Volkswagen at gunpoint. Glanton then began driving away in L.S.H.'s white work van, and Head began driving away in the recent Volkswagen while holding L.S.H. at gunpoint with a .40-caliber semi-automatic pistol.
>
> Shortly after leaving the scene of the carjacking, victim L.S.H. struggled with Head. Head then shot L.S.H. once in the chest and twice in the abdomen and crashed the rental Volkswagen into a tree, rendering it inoperable. Head then fled the scene of the murder. During this time, Head called Glanton by cell phone and directed Glanton back to a school where Head was hiding. . . . Glanton then arrived in L.S.H.'s white work van and picked up Head.
>
> Head and Glanton drove to Opa Locka, where they obtained a second car. Head and Glanton then drove separately to the Northside District of Miami, where they used gasoline to light L.S.H.'s work van on fire.

Factual Proffer, *United States v. Glanton*, No. 19-20063-CR-RKA-2 (S.D. Fla. Apr. 2, 2021), ECF No. 161 at 1–5.

After a lengthy plea colloquy, we adjudicated Glanton guilty of Counts 1, 5, 8, 9, and 10 of the Indictment, and the Government dismissed the remaining counts. *See* Amended Judgment, *United States v. Glanton*, No. 19-20063-CR-RKA-2 (S.D. Fla. Sept. 17, 2021), ECF No. 207 at 1. For these crimes, we sentenced Glanton to 400 months in prison—a sentence that consisted of "196 months as to counts 1, 8, 10, all term[s] to run concurrent, 84 months as to count 5 to run consecutive with counts 1, 8, 10 and 120 months as to count 9 to run consecutive with count 5." *Id.* at 2.

## THE LAW

### A. Standard of Review

Because collateral review isn't a substitute for a direct appeal, a movant can proceed under § 2255 only in extremely limited circumstances. As relevant here, a prisoner is entitled to relief under § 2255 if (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of

3

the maximum authorized by law," or (4) the sentence is "otherwise subject to collateral attack." § 2255(a); *accord McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). In other words, "relief under § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (cleaned up); *see also United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge will not do service for an appeal."). If a court grants a § 2255 claim, the court "shall vacate and set aside the judgment and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." § 2255(b). The movant bears the burden of proving his § 2255 claim. *See Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017) ("We rest our conclusion that a § 2255 movant must prove his [claim] on a long line of authority holding that a § 2255 movant bears the burden to prove the claims in his § 2255 motion." (cleaned up)), *cert. denied*, 139 S. Ct. 1168 (2019).

**B.     Ineffective Assistance of Counsel**

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. CONST. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88). This same standard applies to alleged errors made by both trial and appellate counsel. *See Farina v. Sec'y, Fla. Dep't of Corr.*,

536 F. App'x 966, 979 (11th Cir. 2013) ("A claim of ineffective assistance of appellate counsel is evaluated under the same standard as for trial counsel.").

To establish the first prong (deficiency), "a petitioner must [show] that *no* competent counsel would have taken the action that his counsel did take[.]" *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc) (emphasis added). So, if "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial," counsel could not have performed deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong (prejudice), "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To succeed on this prong, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. If the defendant pleads guilty, the prejudice prong is modified so that the defendant must instead show "that there is a reasonable probability, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

**ANALYSIS**

Although Glanton appears to advance only one claim—that defense counsel was ineffective under *United States v. Davis*, 139 S. Ct. 2319 (2019), because he "failed to inform petitioner of case law that could have challenged the validity of the petitioner's multiple 924(c) counts"—a closer review of his Motion reveals that he's actually asserting several grounds for relief, all centered around his belief that counsel should've negotiated a better deal with the Government. *See* Memo at 2. In addition to

the *Davis* claim, Glanton also complains that counsel (1) "never suggested or even contemplated to negotiate a plea that was consistent with the facts of this case," *ibid.*; and (2) failed to inform Glanton that he "had a cognizable defense to [carjacking,]" *id.* at 3. We reject all three claims.

### A.     The *Davis* Claim

In *Davis*, the Supreme Court held that § 924(c)'s "residual clause" was "unconstitutionally vague." 139 S. Ct. at 2336. After *Davis*, then, a defendant cannot be convicted of a § 924(c) offense that's predicated solely on a residual-clause "crime of violence." *Brown v. United States*, 942 F.3d 1069, 1075 (11th Cir. 2019) ("*Davis*, as we have mentioned, struck down the residual clause as unconstitutionally vague. For that reason, the survival of Brown's § 924(c) conviction depends entirely on whether conspiracy to commit Hobbs Act robbery qualifies as a crime of violence under the elements clause." (cleaned up)). Glanton blames his lawyer for allowing him to plead guilty to the § 924(c) offense in Count 5, even though the only predicate for that offense was the conspiracy to commit Hobbs Act robbery charged in Count 1—an offense that (we can all agree) is no longer a "crime of violence" under *Davis*. *See* Memo at 2 ("[C]ounsel had every opportunity to preserve the issue of [Hobbs] Act conspiracies not meeting the definition of crime of violence. . . . Yet Defense Counsel Mark Lowry failed to analyze Mr. Glanton's plea offer to adequate[ly] advise the petitioner whether the plea agreement was consistent with applicable caselaw[.]"); *see also Brown*, 942 F.3d at 1075 ("[W]e conclude that conspiracy to commit Hobbs Act robbery does not qualify as a 'crime of violence,' as defined by [§ 924(c)'s elements clause.]").

In saying so, however, Glanton simply misreads the Indictment—which unambiguously predicated Count 5, not on Count 1 (as Glanton suggests), but on "Count 4 of the Indictment[.]" *See* Indictment, *United States v. Glanton*, No. 19-20063-CR-RKA-2 (S.D. Fla. Feb. 1, 2019), ECF No. 1 at 4 ("[Glanton] did knowingly use and carry a firearm during and in relation to a crime of violence, and did knowingly possess a firearm in furtherance of a crime of violence, . . . that is, a violation of [18

6

U.S.C. § 1951(a)], as charged in Count 4 of the Indictment[.]"). And Count 4 alleged that Glanton had committed a *substantive* Hobbs Act robbery on July 11, 2018. *Id.* at 3–4. For what it's worth, the Plea Agreement confirms that Count 5 was predicated on the Hobbs Act robbery charge (Count 4)—not the Hobbs Act conspiracy charged in Count 1. *See* Plea Agreement, *United States v. Glanton*, No. 19-20063-CR-RKA-2 (S.D. Fla. Apr. 2, 2021), ECF No. 161 at 1 ("Count 5 charges the Defendant with brandishing a firearm in furtherance of a crime of violence, that is, the robbery of victim D.S."). Of course, substantive Hobbs Act robbery *is* a "crime of violence." *Brown*, 942 F.3d at 1075 ("It's worth emphasizing that Brown pled guilty to *conspiracy* to commit Hobbs Act robbery, not substantive Hobbs Act robbery, a crime we have previously held constitutes a crime of violence under the elements clause." (emphasis in original)).

And it's of no moment that Glanton didn't plead guilty to Count 4, because he admitted in the factual proffer *both* that he committed the substantive robbery on July 11, 2018, *and* that the Government would have established his involvement in that robbery beyond a reasonable doubt. *See* Factual Proffer, *United States v. Glanton*, No. 19-20063-CR-RKA-2 (S.D. Fla. Apr. 2, 2021), ECF No. 161 at 2 ("While holding D.S. at gunpoint, Head took D.S.'s Roto-Rooter van keys, cell phone, and wallet. . . . Head provided D.S.'s work van keys to Proby and Glanton, who then removed valuable plumbing equipment from D.S.'s work van. In total, Proby and Glanton took over $10,000 worth of plumbing equipment from D.S.'s work van, all of which was manufactured outside of the State of Florida, and all of which was owned by Roto-Rooter, a company engaged in interstate commerce and based outside of Florida.").

The Eleventh Circuit addressed a similar situation in *United States v. Frye*, 402 F.3d 1123 (11th Cir. 2005). The defendant there likewise argued that his § 924(c) conviction should be vacated "because he was not convicted of the predicate [offense] for Count Five or charged with the predicate [offense] for Count Six." *Id.* at 1127. Rejecting this contention, the Eleventh Circuit held that "section

7

924 *does not* require that defendant be convicted of, or even charged with, the predicate offense to be found guilty of using or carrying a firearm in relation to the predicate offense. Section 924(c) requires only that the [predicate offense] be one that 'may be prosecuted.'" *Ibid.* (emphasis added).

By agreeing in the factual proffer that the Government would've proven his involvement in the robbery beyond a reasonable doubt, Glanton has conceded that the robbery is a crime that "may be prosecuted." *United States v. Kitchen*, 2018 WL 11422081, at *2 (11th Cir. May 7, 2018) ("Section 924(c) only requires a showing that the predicate offense is one the government could have prosecuted, meaning a showing that the defendant used or carried a firearm during and in relation to a crime of violence or a drug trafficking crime. As part of his plea agreement, Kinchen signed a factual proffer admitting that, on April 21, 2015 and on May 17, 2015, he entered a store and ordered those inside to give him money and property 'at gunpoint.' This was sufficient to establish the substantive Hobbs Act robbery counts as the predicates for Kinchen's § 924(c) convictions." (cleaned up)); *Pena v. United States*, 2017 WL 11518831, at *6 (S.D. Fla. Oct. 4, 2017) (White, Mag. J.) ("Here the charging document and the statement of facts presented at the plea colloquy establish that the movant carried a firearm during a robbery. Thus even though the movant did not plead guilty to the substantive Hobbs Act robbery, the facts support a conviction under § 924(c) for carrying a firearm in furtherance of the robbery[.]"), *report and recommendation adopted*, 2018 WL 10666967 (S.D. Fla Jan. 30, 2018) (Zloch, J.).[1]

Counsel cannot be ineffective for failing to advance a meritless *Davis* claim. *See Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."). So, we **DENY** Glanton's first claim for relief.

---

[1] Glanton's plea agreement ostensibly acknowledges this: In it, after all, he waived any claims that "the admitted conduct does not fall within the scope of the statutes of conviction." Plea Agreement, *United States v. Glanton*, No. 19-20063-CR-RKA-2 (S.D. Fla. Apr. 2, 2021), ECF No. 161 at 7.

### B. The Sufficiency of the Plea Bargain

Glanton's second argument is that counsel was ineffective because he "never suggested or even contemplated to negotiate a plea that was consistent with the facts of this case." Memo at 2. Here, Glanton cites a case from the Eighth Circuit, *United States v. Dean*, 810 F.3d 521 (8th Cir. 2015), *rev'd*, 137 S. Ct. 1170 (2017),[2] for his view that he should've gotten a more favorable deal because he was "clearly the follower" and "lacked the requisite criminal history of violence necessary to trigger an enhanced penalty." *Ibid.* Glanton claims that counsel's inadequate negotiating skills compelled him to accept a "draconian plea agreement," even though a better deal was on the table. *Ibid.*

Three problems with this. *First*, Glanton *did* receive a better deal than his codefendants—precisely because his lawyer was able to persuade the Court (and the Government) that Glanton had played a lesser role in the conspiracy. Although a 400-month sentence is certainly substantial, his codefendant, Jamar Head—who pistol-whipped D.S. and killed L.S.H.—received a sentence of *720 months*, despite pleading to the very same counts Glanton admitted to. *See* Judgment, *United States v. Head*, No. 19-20063-CR-RKA-1 (S.D. Fla. Sept. 16, 2021), ECF No. 205 at 1–2. This substantial disparity between Glanton's sentence and Head's strongly suggests that Glanton's lawyer did very well by his client.

*Second*, Glanton was no "minor" participant in these crimes. As the factual proffer confirms, Glanton was an active participant in every aspect of these offenses—except for the murder of L.S.H.

---

[2] We aren't quite sure why Glanton has cited to *Dean*. For one thing, the Eighth Circuit was unanimously reversed by the Supreme Court, so its opinion lacks any precedential or persuasive authority. *See Dean*, 137 S. Ct. at 1178. For another, *Dean* involved sentences that were imposed after a trial and has nothing to do with the facts of this case, where the parties agreed to a sentencing range pursuant to a plea agreement. *See Dean*, 810 F.3d at 526; *see also* Plea Agreement, *United States v. Glanton*, No. 19-20063-CR-RKA-2 (S.D. Fla. Apr. 2, 2021), ECF No. 161 at 5 ("The Defendant agrees that he will recommend a sentence of no less than 360 months in prison; and the United States agrees it will recommend a sentence of not more than 420 months in prison.").

*See* Factual Proffer, *United States v. Glanton*, No. 19-20063-CR-RKA-2 (S.D. Fla. Apr. 2, 2021), ECF No. 161 at 3–4.

Glanton is also wrong when he claims that he doesn't have a violent criminal history. Before his arrest in this case, Glanton had been adjudicated guilty of committing an armed robbery with a weapon in Miami-Dade County on February 7, 2016. *See* Presentence Investigation Report, *United States v. Glanton*, No. 19-20063-CR-RKA-2 (S.D. Fla. Apr. 2, 2021), ECF No. 183 at 19–20. And he'd been arrested several times for—among other things—battery, armed robbery, and aggravated assault with a deadly weapon. *See id.* at 20–22.

*Third*, Glanton doesn't even try to show that the Government would have been willing to offer him a better deal than the one he got. *See Vargas v. United States*, 2013 WL 12358164, at *5 (N.D. Ga. Sept. 12, 2013) (King, Mag. J.) ("Movant's assertion that counsel made no effort to negotiate a better deal fails because Movant presents nothing to suggest that a better deal may have been available or agreed to by the government."), *report and recommendation adopted*, 2016 WL 1237850 (N.D. Ga. Mar. 29, 2016) (Duffey, J.); *see also Burger v. Kemp*, 483 U.S. 776, 785 (1987) (denying an ineffective-assistance claim that counsel failed to successfully negotiate a plea agreement where "[t]he notion that the prosecutor would have been receptive to a plea bargain is completely unsupported in the record").

Glanton's second claim is thus likewise **DENIED**.

### C.     The Carjacking Claim

In his final claim, Glanton blames his lawyer for failing to tell him that the Government couldn't prove his involvement in the carjacking. *See* Memo at 3 ("The facts confirm that petitioner did not have any involvement whatsoever in luring the plumber to the location of the crime, nor did he participate in the robbery"). In Glanton's view, "had counsel informed petitioner of the actual elements of the crime for which he was charged, the petitioner would have known that he had a

cognizable defense to that particular charge and he would have instead elected to go to trial on that charge." *Ibid.*

"To obtain a conviction for carjacking . . . the 'government must prove that the defendant (1) with intent to cause death or serious bodily harm (2) took a motor vehicle (3) that had been transported, shipped or received in interstate or foreign commerce (4) from the person or presence of another (5) by force and violence or intimidation.'" *United States v. Harbin*, 715 F. App'x 873, 874 (11th Cir. 2017) (quoting *United States v. Diaz*, 248 F.3d 1065, 1096 (11th Cir. 2001)). Glanton contends that he never "took the vehicle by using force or violence," never acted "in an intimating manner," never "brandished any weapon or firearm during the commission of the" offense, and never caused the victim to suffer a "serious bodily injury or death[.]" Memo at 2–3.

This final claim fails for two reasons. *First*, Glanton played a *major* role in planning and executing the carjacking of L.S.H. The factual proffer—which Glanton signed and whose accuracy Glanton confirmed under oath in open court—confirms that Glanton: (1) conspired with Head to "complete another robbery of a plumber" on July 12, 2018; (2) traveled with Head to rent a Volkswagen Jetta in Miami—the same vehicle the two of them later drove to the carjacking location; (3) allowed Head to use *his* cellphone to "[call] L.S.H. to urge him to hurry to the job site"; and (4) helped Head take "L.S.H.'s van keys and cell phone" after Head held L.S.H. at gunpoint. Factual Proffer, *United States v. Glanton*, No. 19-20063-CR-RKA-2 (S.D. Fla. Apr. 2, 2021), ECF No. 161 at 2–3. This proffer—which (again) Glanton signed and, in open court, swore was true and accurate—is more than enough to show that Glanton *personally* participated in the robbery.

*Second*, the mere fact that Glanton didn't personally kill L.S.H. (or even use a firearm) doesn't absolve him of responsibility for the carjacking. Federal law recognizes that "a person who furthers—more specifically, who 'aids, abets, counsels, commands, induces or procures'—the commission of a federal offense 'is punishable as a principal.'" *Rosemond v. United States*, 572 U.S. 65, 70 (2014) (quoting

18 U.S.C. § 2). A defendant "aids and abets" another in committing an offense when "(1) the substantive offense was committed by someone; (2) the defendant committed an act which contributed to and furthered the offense; and (3) the defendant intended to aid in its commission." *United States v. Camacho*, 233 F.3d 1308, 1317 (11th Cir. 2000). As we've said, Glanton was an essential participant in the carjacking scheme: He helped Head plan the robbery; he gave Head his phone to lure L.H.S. to the carjacking location; he was with Head when Head held L.S.H. at gunpoint; he helped Head take "L.S.H.'s van keys and cell phone" after Head held L.S.H. at gunpoint; and he drove L.S.H.'s van away from the scene at Head's direction. *See* Factual Proffer, *United States v. Glanton*, No. 19-20063-CR-RKA-2 (S.D. Fla. Apr. 2, 2021), ECF No. 161 at 2–3. So, while Glanton may not have intended to kill or harm L.S.H., the Government only had to prove that Glanton "willfully participated in the carjacking 'with the full knowledge of the circumstances constituting the charged offense.'" *United States v. Hinton*, 730 F. App'x 719, 723 (11th Cir. 2018) (quoting *Rosemond*, 572 U.S. at 77). Since the factual proffer establishes that the Government proved *precisely* that, his lawyer cannot be faulted for failing to argue otherwise. *See Freeman*, 536 F.3d at 1233 ("A lawyer cannot be deficient for failing to raise a meritless claim.").

Glanton's third claim is **DENIED**.

### EVIDENTIARY HEARING

Because the record directly and conclusively refutes Glanton's claims, we see no need to hold an evidentiary hearing in this case. *See Shriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

### CERTIFICATE OF APPEALABILITY

A COA is appropriate only where the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show

that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because no "jurists of reason" would find our resolution of Glanton's claims "debatable" or wrong, Glanton hasn't shown that he's entitled to a COA.

\*\*\*

Having carefully reviewed the record and the governing law, the Court hereby **ORDERS AND ADJUDGES** that the Motion [ECF No. 1] is **DENIED**. A COA is **DENIED**. Any pending motions, including any requests for an evidentiary hearing, are **DENIED**. All deadlines are **TERMINATED**. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 21st day of September 2022.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: Keon Travy Glanton, *pro se*